Madam Clerk, please call the case on the docket today. 15-2033, Steven Moya v. City of Chicago Council, please step up, tell us your name, and correct me how much time you delay. Good morning, Your Honors. I am Jack Kennedy. I represent the plaintiff appellant Steve Moya. I'd like 15 minutes, and if I could please reserve 5 minutes for a vote. Okay. Good morning, Your Honor. Carl Newman on behalf of the appellees. We'll ask for an interval of 15 minutes. Okay. We're pretty liberal on the time, and we don't have any other case. But please don't repeat the matters. Thank you very much. Mr. Kennedy. Thank you, Your Honor, and may it please the Court. On February 2, 2011, Albert Moya was struck and killed by a City of Chicago assault truck that was reversing up a one-way street. Albert's shoe and wallet were recovered from the pedestrian crosswalk area at the start of the block. The judgment in this case cannot stand because the trial was fundamentally unfair. Today, we urge this Court to order a new trial for four separate independent reasons. First, the circuit court's comments that its rulings for defendants would prevent an appeal for which Mr. Moya would thank it later reflect a profound abuse of discretion that taints the judgment. Second, defendants' improper opening statement and the Court's related ruling excluding the actual evidence denied a fair trial by distorting crucial adjudicative facts. Third, the Court committed a serious instructional error that prevented Mr. Moya from prevailing on the case he tried. And fourth, the Court admitted defendants' video of the subject truck, where that video was not a neutral demonstrative aid, but an attempt to precondition the jury for which precedent compels reversal. I intend to focus my remarks this morning on the first three issues. Unless the Court has questions, we would stand on our briefs with respect to the fourth issue concerning the video. Turning first to the circuit court's comments, Your Honors, the circuit court in this case abused its discretion by considering the strength of the party's merits when ruling. Throughout the proceedings, the Court commented that Mr. Moya would win, defendants would lose, and defendants would appeal. The Court stated that it did not want to give defendants something to appeal and that Mr. Moya would thank the Court later. How were you prejudiced by that statement? The statement was prejudicial because the Court expressed a constellation of views that created a radically uneven playing field when it came to obtaining favorable discretionary rulings. Were any of those statements made in the presence of the jury? No, Your Honor, but our point on this appeal is about what the comments show the Court considered. The comments reflect an abuse of discretion because they show the Court considered impermissible criteria when ruling. But at the end of the day, the jury made the decision, correct? Correct, Your Honor. Our point is that the Court's consideration of improper criteria when ruling renders its decisions an abuse of its discretion. Well, how do we know he was improper criteria? I mean, he made those comments in passing, made many other comments. Our point is picking a winner and deciding who would win, who would lose. Well, he didn't say somebody was going to win. He said he might thank me later, but he's trying to protect, do the right thing. I mean, to me it shows that he's being fair and he's not going to be led astray. Was he a little perturbed considering that this kept coming up? I mean, our point fundamentally is that the Court considered who was going to win, who was going to appeal, and those are not proper matters for a trial court to consider. So that's the first issue. Do you have a case that says that? On point? We cite cases. But nothing on point. No, this is unprecedented. We're aware of no case where a court talks about who will win, who will lose, and how that will affect the appeal. Our position is considering who will win and who will be challenging the Court's ruling on appeal can only improperly affect a trial court's exercise of discretion. And that Mr. Moyer, our submission is Mr. Moyer should be entitled to a trial free from actual or even apparent disadvantage. But there's no prejudice? Right. There is no prejudice upon the jury, correct? Right. And you're not saying the judge was biased? No, we're not saying the judge was biased. He had a personal bias against anyone. So an abusive discretion standard, it's pretty extreme for us to find that those comments would be abusive, wouldn't it? Well, our point is that the Court should not be considering who will be challenging its rulings on appeal and that that can only improperly affect a trial court's exercise of discretion. Were you denied a fair trial by the Court making those comments? Yes, in that it reflected a trial process that was not fair to Mr. Moyer because from the circuit court's vantage point, a ruling against Mr. Moyer was harmless because he would win anyway, but a ruling for him was something defendants could appeal. But turning to the second issue we present on appeal, Your Honors, defendants opening statement and the Court's related ruling excluding evidence,  defense counsel moved out evidence of the real reasons Mr. Togar got stuck on Alliance Court, that he went there to see how bad the conditions were and to see his grandchildren. Counsel then stood before the jury and told jurors the completely false story that Mr. Togar was led to that location while en route to the fuel station by a series of unexpected road blockages. Counsel insisted that Mr. Togar, quote, took a route he needed to take because of the blizzard, end quote. Despite counsel's misstatements, the Court refused to admit the actual evidence, so the case went to the jury with jurors, went to verdict with jurors under the completely false impression that a snow emergency, an act of God and not volitional unnecessary risk-taking is what caused the collision. What does the motive have to do with why he was there? There is a difference between a defendant who is laboring under an emergency and a defendant who engages in volitional unnecessary risk-taking. Well, so a reasonable jury could find. Well, but the fact is the issue is separate from why he got there. I mean, whatever reason he got there, I mean, its relevance is slight, if any. Well, what the jury did not know is that Mr. Togar left plowed arterial roads that led directly to his destination to journey onto Elias Court through headlight high snow, and that's why he got stuck. Is it completely correct, because there was testimony that he could have taken another route, correct? There were conclusory admissions that he could have taken another route, but it was unclear what that meant. We weren't able to show, you know, the actual decision-making in terms of the conclusion, the testimony that he could have taken another route could simply have meant that he circled back around again and took another side street parallel to Elias where conditions could be equally bad or worse. Our point is, and we commend the U.S. Bank v. Lindsay case to this court, our point is Mr. Togar left plowed arterial roads that would have led to his destination to journey through headlight high snow on Elias. That was a negligent route selection. But you were not prevented from showing that the driver was driving back and down that street, and that apparently is when Mr. Boyer was killed, is that correct? Yes, Your Honor. You were able to show that. Correct, Your Honor. And isn't that the most critical fact in this case? It's certainly one of the facts, but what precipitated the collision was getting stuck in snow in the first place, and the jury was, defense counsel's statement and the court's ruling excluding the actual evidence prevented the jury from assessing whether he got stuck in snow due to negligent conduct. The jury was told incorrectly that he was laboring under an emergency at that time, and that whether a defendant's laboring under an emergency or not is a relevant factor in assessing reasonableness, which was the very issue the jury was empaneled to decide. But your question of reasonable was really, it was unreasonable for him to back up the way he backed up without taking notice of the possible dangers behind it. Well. I mean, that was the case, right? You're saying that he backed up negligently and struck this man. Our position was two-fold. First, that he should not have journeyed into headlight high snow on a bias, where there was a direct route that did not involve that hazard, and second, that it was negligent conduct for him to have backed up three-quarters of a block on a one-way street where he could not see what was immediately behind his vehicle. And you also got an instruction that he didn't have a spotter. Those are the things that are critical to you proving your case, correct? Those are some of the things that are important to proving the case. But even on the spotter issue, the court instructed the jury that they should not consider defendants' failure to employ a spotter and whether defendants were negligent. But in terms of counsel's statements, counsel told the jury a false story that Mr. Tovar was confronting an emergency. The court then refused the actual evidence which would have shown what really occurred here, and that was prejudicial because it bore on the very issue the jury was supposed to decide, whether he was reasonable. And I mean, what does – if it had – if there was testimony that he went to show his truck to his grandchildren to go by his daughter's house, why would that – why isn't that prejudicial? You say it's not prejudicial. It's not unfailingly prejudicial. It may be prejudicial in that it would have harmed the defendant's case, but all evidence must do that, otherwise it's not probative of anything. Defendants don't argue that the evidence was irrelevant. They actually can see that. We explain – They say there was a little – slight relevance. That's what I think is the words they use. Well, in their briefing, they focus on Rule 403 exclusively, and what they say is that the jury would have – the fact that Mr. Tobar failed to take a direct route to the fuel station would have caused the jury to focus on his effectiveness as an employee for the city. Our position is that the much more relevant, obvious inference was that it related to his operation of the motor vehicle. Again, we cite – we commend the Lindsay case to this court, which explains that a commercial motor vehicle operator's failure to take a direct route to his or her destination is a permissible theory on which a plaintiff can proceed. Mr. Moyer was prevented from presenting that theory to the jury. And Mr. Moyer could not even – in terms of the counsel's statements, Mr. Moyer was prevented from even telling the jury to ignore those false statements. The statements are prejudicial because they said there was an emergency, but there was not. And then when Mr. Moyer – Mr. Moyer could not respond to that in any way through evidence or argument. And, in fact, when he tried an argument to tell the jury to ignore those statements for lack of evidence, the court – the court sustained objections, which, if anything, would suggest to jurors that they should credit the defendants' false statements. Our position is a party should not be allowed to exclude unfavorable evidence on a question on grounds that the topic is irrelevant, and then put in false factual assertions on that same topic. That should not be permitted. That denies a fair trial. Because counsel told the jury, quote, you know, that the reason Mr. Toboe took the route he did is, quote, he needed to take a – he needed to take this route because of the blizzard, end quote. So counsel moved out the evidence on grounds that was irrelevant, and then put in false prejudicial statements. The statements are not evidence. No, they're not. And they were told to the jury twice. That's correct, Your Honor. But the problem here is that counsel's statements bore on the central issue of the case of reasonableness, and the case went to verdict on the theory that Mr. Toboe was confronting a snow emergency, where, in fact, he drove into headlight high snow to see how perilous those conditions were and to wave to his grandchildren. Our position is that evidence should have been admitted. It was relevant as an initial matter. It was relevant pursuant to U.S. Bank v. Lindsay, and also it was relevant on a curative basis to a cure of counsel's false statements. I'd like to turn, finally, to the jury instruction issue. The court's jury instructions – the court committed a serious error that prevented Mr. Moyer from prevailing on the case he tried. The court refused Mr. Moyer's instructions that he reversed on a one-way street, he reversed when unsafe to do so, he reversed a further distance than reasonable, and he reversed into an area he could not see. Instead, the court instructed the jury that they had to find that Mr. Toboe reversed in an unsafe manner. That was a profound change in the instructions. Mr. Moyer's theories – Mr. Moyer's allegations of negligence advanced the theory that it was negligent conduct to reverse up three-quarters of a block on a one-way street where you cannot see what is behind your vehicle. The court's instructions didn't permit that theory. That was removed from jury consideration entirely. Instead, the court told jurors that they had to find that the manner in which Mr. Toboe backed his vehicle was itself unsafe. This would be no different than in a case of a person proceeding against a red light. The plaintiff submitted an instruction that said, proceeded against the red light, and the court instructed the jury, proceeded against the red light in an unsafe manner. A plaintiff should be permitted to assert that an unsafe driving maneuver is negligent conduct, regardless of the manner in which it is performed. It's not unsafe to go in reverse, is it? Why didn't you do it reasonably? Well, the evidence… If you run through a red light, everybody would acknowledge that it's against the law and not safe. But it's not unsafe to go in reverse. It's unsafe to go in reverse unsafely, right? Well, our position, the evidence in this case was that there was a significant blind spot at the rear of the vehicle. So by reversing up that one-way street, Mr. Toboe was backing into an area he could not see and was traveling the opposite direction from what all other road users would expect. Which would be unreasonably not safe, right? Correct. It would be reversing under circumstances that made doing that unsafe. There would not be an unsafe manner of reversing. Just like if a driver came to a complete stop at a red light and looked both ways, saw no traffic, and proceeded in a safe manner, they would nevertheless have proceeded against a red light. A plaintiff should be committed to get an instruction that proceeding against a red light alone is unsafe. Because it is unlawful, just as reversing up the entire length of a one-way street is unlawful. In their brief, defendants admit that the central issue for the jury was whether Mr. Toboe reversed under circumstances that made doing so unsafe. But the jury was not able to consider that. A jury that agreed with Mr. Moyer's theory that it was negligent conduct to reverse up three-quarters of a block on a one-way street where you cannot see the area into which you were backing would be required to render a defense verdict absent proof that this unsafe driving maneuver was executed in an unsafe manner. In other words, if he reversed too quickly or he zigzagged back and forth as he backed, our position was backing up on a one-way street, just like proceeding against a red light, is unreasonably unsafe. In order to reverse, are you telling us that we need to accept fully everything that you proposed for the jury instruction? No, the court could have simplified those instructions. But they did simplify it. So what word or words are missing from the simplification that you say should have been in there, specifically? Specifically, the court should have instructed the jury that Mr. Moyer could prevail if jurors found that Mr. Tobar reversed when unsafe to do so. Well, he said reversed his vehicle in an unsafe manner, right? That is different. Reversing in an unsafe manner means reversing too quickly, reversing going back and forth. Our position is he reversed when unsafe. The surrounding circumstances, the fact that he was backing up on a one-way street… So you're complaining about the word manner? Do you have a different word than manner? Correct. It would be reversed when unsafe to do so. That's different from reversed in an unsafe manner. Just as proceeded against a red light is different from proceeded against a red light in an unsafe manner. It adds to a plaintiff's book. A plaintiff should be committed to assert that conduct is negligent, standing alone, no matter how safely it's performed. Same with driving the wrong way on an expressway. No matter how safely that's performed, it's negligent conduct, or so a jury could find. Our position was, by backing up the entire length of a one-way street, that was negligent conduct where the driver was unable to see what's behind his vehicle. In fact, there are only statutes in this, the Municipal Code of Chicago, that prohibit you or I, Your Honor, from being at the end of a one-way street and backing all the way up the entire street. You could get a ticket for doing that. And in fact, Mr. Tovo has found, I think the key point is there is a significant distinction between reversed in an unsafe manner and reversed under circumstances that make doing so unsafe, or reversed when unsafe. That's the distinction we draw. Counsel, you're asking this court to just consider one specific instruction. When the court is reviewing instructions, aren't we supposed to look at them in their totality and determine whether or not a litigant was denied a fair trial? Yes, sir. Rather than focusing on a specific instruction. Yes, sir. That's just what you're asking us to do. Well, we cite Reed v. Walnut, which says that the court must put forth all the issues proposed by a plaintiff if they're supported by the evidence. We agree that the court may do some rewriting and condensing, but it cannot change the substance of the instruction. So we would rely on the Reed case for that. But our position fundamentally is a jury that agreed with Ms. DeMoya that it's unsafe to back up almost the entire length of a one-way street where you can't see behind your vehicle under the court's instructions. If they found that the manner in which that was done here was unsafe, although the conduct itself is negligent, they would be required to render a defense verdict. And that was prejudicial to Ms. DeMoya. If there are no further questions at this time, I'd reserve the balance of my time for rebuttal. Thank you, Your Honor. May it please the Court. The judgment of the circuit court on the jury's verdict should be affirmed. Primarily, this case on appeal focuses on two issues, the opening statement by defense counsel and the exclusion of evidence that was prejudicial on four or three grounds that Tovar's daughter and grandchildren lived on Elias Court. Mr. Moya was able to argue and offered evidence that Rich Tovar did not need to turn on Elias Court, that he had other options, that there were other streets available and routes available. He was prevented from offering a single piece of testimony through the testimony of Tovar's daughter that he was planning to go by and wave at his grandchildren. I want to clarify something very quickly about that testimony, which is that it is, one, more equivocal than has been represented in the briefs, and two, while it does say that Tovar was planning to turn on Elias to wave to his grandchildren, it says something in the deposition to the effect of, and he would see how the streets were because he's going to be in my area and he'll be, he's on Archer, I live right off of Archer, and he'll see how bad my street is. Moya has argued this as though what was excluded was evidence that Tovar told his daughter, I'm going to turn on your street for the purpose of determining how perilous it is. That evidence does not exist. While that inference maybe could have been argued to the jury, it's not really what that evidence shows. The evidence was excluded on four or three grounds alone, not relevance grounds. The circuit court assumed that there could be some slight relevance, some minimal probative value, and excluded it based on the danger of unfair prejudice because the evidence would tend to show that Tovar was a bad employee on fraud. When asked to articulate a basis for relevance, Moya's counsel actually suggests that the relevance is that Tovar would have wanted to get off the street quickly because he would get in trouble with his employer if his boss found out he was on that street. So clearly the evidence has that danger of unfair prejudice. The balancing comes out in the circuit court's sound discretion in favor of exclusion in part because the thing that they were trying to use this evidence to prove, that he had other choices, there's a wealth of other evidence available, including out of Tovar's own mouth on the witness stand, both during his direct examination and on cross-examination. And this jury sees maps of the area over and over again. Tovar admits during cross-examination, this is an unplanned street that's one block long. And even if I hadn't gotten stuck, I would have only been exactly where I was five minutes before at the intersection of Elias and Lyman. So if they want to stand up in front of this jury and say there's no good reason to turn down this street, they already had that case. That is the case this jury found wanting. Fundamentally, this is just a case for the plaintiff to fail to carry his burden of proof because what's really crucial in this case, to go back to one of the questions before, is how this accident occurred and not why he's at the scene of the accident. I want to go just for a moment to the opening statements. And before I address the accusation of deliberate misconduct, I do want to address the waiver point first. We cite the Lovell decision from the 4th District as well as this court's decision in Davis v. City of Chicago for the proposition essentially that the failure to object to an opening statement waives that as a basis for a new trial. Just because this was dealt with a little bit in the reply brief, more to suggest that he objected at the first possible opportunity to these statements and that it would have been improper to object earlier than he did during the opening. Both of those claims in the reply cannot be squared with the record. He actually raises the objection in the middle of the direct examination of the second witness of the day. And as to, you know, objecting in front of the jury during an opening statement would have somehow been improper. That didn't stop Moy's counsel from objecting seven other times during the city's opening statement. It didn't object to these particular comments. I want to address the problem with the opening statement that leads to some confusion is that there were originally one motion in limine filed by the city to exclude two different but related topics. The first is what we know is undisputed from the GPS evidence that Tobar, in fact, drives in this circle around before he turns on to Elias. The second is that he turns on to Elias because his grandkids live on it. So we moved to exclude both pre-trial and Moy opposed both, and we won on the grandchildren issue and we lost on the circle beforehand. The statements of counsel in opening are an explanation for why he drives in this circle. That evidence was all going to be coming in at the moment that statement is given. That's the state of affairs in the motion in limine. And so what counsel is promising to the jury is when Rich Tobar takes the stand, he's going to explain this is why he drove in this circle. Now, what Moy is getting at when they say that they believe this explanation is false is that it is inconsistent with his deposition, which we admit now on appeal, and we admitted then in the circuit court. In his deposition, Tobar testifies that he never got to Loomis, that he turned on Elias the first time he passed it. We know from the GPS evidence that that deposition testimony is inaccurate. So the explanation in opening statement that this is why he circles the block and he gets stuck at the base of Elias on limine for a couple of minutes and we know he's parked there for a while because of the GPS, that's the first time there's any explanation for why he drove in this circle. And finally, then they also came up as well on topside that the jury was instructed not once but twice that opening statements are not evidence and in fact received the fairly commonplace instruction during the course of closing argument that if the statement of counsel is not supported by the evidence, that the jury should disregard it. There's no reason to believe the jury failed to follow those instructions here. I would like to turn just briefly to the instructions issue, which the court discussed in great detail. Our position on this is that reverses vehicle in an unsafe manner is simply a generic way of explaining to the jury in a more concise fashion. And this distinction that Moya is trying to draw between conduct and manner, one, I would note, as we note in our brief, they didn't think that manner was a toxic word when they were writing their complaint and suggested that Tobar drove the vehicle in a negligent manner. And during the course of the instructions conference, while they did object to less than their original 10 sort of factual theories of failure to exercise reasonable care, they didn't in that moment say, judge, if the jury hears unsafe manner, they're going to think it means please disregard the circumstances that this whole case has been about. And probably most importantly, if the jury is wondering, what do you mean reverses vehicle in an unsafe manner, Moya's counsel stands up in closing argument and says unsafe manner in that he reversed his vehicle on a one-way street, three-quarters of a block, that he's got a blind spot, and that there's two feet of snow and an unclad road. Is your position that manner means the same as could not be done safely? Manner means the same as could not be done safely. Are those different concepts? Either they are similar or they're different. What's your position? I don't think they're perfectly the same. But the question, to go back to Justice Neville's question about the instructions before, is to assess the instructions as a whole. And Moya bears the heavy burden of showing that this set of instructions taken as a whole clearly misled the jury, that they would hear these instructions. I think this is the key instruction is the conduct, Tobar. So depending on those particular words, that is really, there's nothing else there that says, when we're talking about manner versus could not be done safely. So you're saying what? Our position is that they were able to argue that it could not be done safely under this instruction. They could argue that even though the words in the instruction was manner, which is different. I don't, it's hard to believe that it would have precluded that theory entirely and that the jury would have understood the term reverses vehicle in an unsafe manner to mean disregarding the fact that he reversed. I don't, it doesn't seem to follow. And I really want to quickly go to the citation to read, which I believe is very clearly distinguishable. Reed v. Wal-Mart concerns instructions, as this court has actually described that decision maybe about a year ago. The plaintiff offered ordinary negligence instructions. Wal-Mart offered premises liability instructions. The court chose the premises liability instructions. Therefore, the jury was asked to find whether the plaintiff had proved actual or constructive notice of the hazard, and thereby they added an element to the plaintiff's burden. Reed v. Wal-Mart says that you can't change the plaintiff's claim by adding elements. The issue here of these 2801 instructions, the sort of issue in the ordinary negligence case, is always whether or not the defendant failed to exercise reasonable care. And so the factual theories, you know, they offered 10, they could have offered more, they could have offered less. 2801, as part of the patent instruction, says that we should reduce repetitious issues. And that's what the circuit court did here. In fact, his own explanation for why he wants to offer reverses vehicle in a negligent manner is that it, quote, leaves you a little room for arguments, to Moya. I know there's a – Was that issue the manner in which he reversed or the issue of whether he safely reversed? It's – our position is that they could have argued whether he safely reversed and on the instruction reversed the vehicle in a negligent – in a non-safe manner. And so if they wanted to argue that, they had the opportunity to do so, and I believe they did. Where it gets a little tricky is where it starts to go into, and I heard my colleague this morning reference the statutes about reversing on a one-way street. So there was a concern that they could, you know, try to argue a case to the jury that essentially was per se negligence. And very quickly about that citation of statutes, I want to point out that we offered in instructions a statute that says, essentially, you can reverse when it's safe to do so. Moya offered the statute that is cited for the first time in his reply brief, which says that it is illegal to go the wrong way on a one-way street. Moya has not appealed the refusal to give that instruction, nor has he appealed the giving of our competing instruction. And so to get to the point where, well, didn't the – did the jury have the ability to consider that he was reversing on a one-way street and that that in and of itself was negligence? We think that that starts to get too close to trying to say that it's per se negligence. Any time, any car, anywhere in the city of Chicago goes in reverse on a one-way street, which is problematic for a city where we parallel park on one-way streets. I want to turn briefly to the video issue. I know that counsel rested on the brief for it, and I would almost do the same. But just very quickly, I want to argue that SPERCA and French are relatively distinguishable, and the reason why is because those contain animations or video where the sort of reenactment was changed in a meaningful way. The issue isn't just that there's differences between the facts of the accident and what's shown in the video, but whether or not those differences would mislead the jury. We don't think that the jury would have looked at this fairly short video of what the backup lights and the alarm sound like, and it would have been confused because there wasn't snow in the video. Just one moment. Oh. I did want to just on this comments issue note that the type of error that is being alleged, I think, has changed. In the opening brief, it cites people v. McGee suggesting a structural error, and now in the reply brief and as well today in oral argument, I heard that the standard was abusive discretion. Of course, those two standards are different. We don't believe under even the abusive discretion standard, those comments reflect an abusive discretion warranting a new trial. And unless there are further questions, we will ask that the judgment be affirmed.  Mr. Penwood. Thank you, Your Honor. Very briefly, I have two points for rebuttal. First, counsel asserted that certain issues were waived. In fact, all of the issues we present on this appeal are preserved for this court's review, at least because all of them were asserted in a post-trial motion. Defendants responded on the merits and had a claiming waiver, and the court ruled on the merits, finding nothing waived. So all of the issues are preserved for at least that reason. Second, as to the instructions, there plainly is a difference between reversing when unsafe to do so and reversing in an unsafe manner. And the prejudice was profound in the light of the facts of this case, which was that Mr. Todlow testified he was reversing slowly. He was checking his mirrors as he backed. Our point is no matter how safely he reversed, backing up almost the entire length of a one-way street when you cannot see the area into which you are driving, that is negligent conduct. The jury was not allowed to assess that in this case. Instead, they were told they'd find that the manner in which he executed that unsafe driving maneuver was itself unreasonable. Which you highlighted in your argument was the fact that he went down almost a full city block without looking out, without having a spotter, without realizing there might be somebody in the crosswalk. Right? Correct, Your Honor. And the fact that we argued on page... Do you think the jury was confused about all that, that they didn't realize that that's what they had to decide? I don't know that the jury was confused, but what it had to decide was whether he reversed in an unsafe manner, because that's what the instructions said, not whether he reversed under circumstances that made doing that unsafe. The fact that we were able to argue our case, I think to Justice Hyman's point to defense counsel earlier, was the fact that the party argues something can't change what the instructions say. The fact that we argued he should not have been backing up almost the entire length of a one-way street shows how profound the prejudice was because the jury was unable to consider those arguments under these instructions. Are you saying that driving down that street in reverse was per se negligent? No, we're saying that a jury could conclude that that was unreasonably unsafe, at least because he was driving into an area he could not see. But the jury here was prevented from assessing whether reversing under these circumstances was negligent. The jury had to find that something about the manner in which he backed up was unsafe. If there are no further questions regarding any of the issues we raised on this appeal, we would ask that the Court reverse and amend for a new trial. Thank you, Your Honor. We'll take the case under advisement. We want to thank both sides for excellent briefs. In my opinion, you both have argued before, and you're two of the most competent young lawyers to argue before me. Every time both of you argue, you're both very excellent young lawyers, and I congratulate you for that, which makes our case more difficult. So thank you for that as well. I concur with his comment about your experience. We'll take the case under advisement.